**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RUEL RAFAEL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:14-cv-1746 (VLB) |
| | : | |
| STATE OF CONNECTICUT | : | |
| DEPARTMENT OF CHILDREN AND | : | |
| FAMILIES, and CONNECTICUT | : | January 3, 2017 |
| JUVENILE TRAINING SCHOOL | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF DECISION GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT [DKT. 43]**

I.   **Introduction**

Plaintiff Ruel Rafael, a former employee of Defendants State of Connecticut Department of Children and Families ("DCF") and Connecticut Juvenile Training School ("CJTS") brings this action for employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*  For the reasons that follow, Defendants' Motion for Summary Judgment [Dkt. 43] is GRANTED.

II.   **Background**

A.   **The Record on Summary Judgment**

"A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).  A party may also support their assertion by "showing that

the materials cited do not establish the absence . . . of a genuine dispute." *Id.* Cited documents must consist of either "(1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial."  Local R. Civ. P. 56(a)3; *see also* Fed. R. Civ. P. 56(c)(4).

"The principles governing admissibility of evidence do not change on a motion for summary judgment."  *Schaghticoke Tribal Nation v. Kempthorne*, 587 F. Supp. 2d 389, 395 (D. Conn. 2008), *aff'd*, 587 F.3d 132 (2d Cir. 2009) (quoting *Merry Charters, LLC v. Town of Stonington*, 342 F. Supp. 2d 69, 75 (D. Conn. 2004)).  "[D]ocuments submitted in opposition to a summary judgment motion must be properly authenticated in order to be considered by the court at summary judgment stage."  *Barlow v. Connecticut*, 319 F. Supp. 2d 250, 257 (D. Conn. 2004), *aff'd sub nom.*, *Barlow v. Dep't of Pub. Health, Connecticut*, 148 F. App'x 31 (2d Cir. 2005); *see also Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) ("[P]roper admission requires a determination on relevance and authenticity.").

The Court need not consider any materials that the parties have failed to cite, but may in its discretion consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).  If a party fails to properly support an assertion of fact, or fails to properly address another party's assertion of fact, the Court may "consider the fact undisputed for purposes of the motion [and] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e); *see also* Local R. 56(a)3 ("[F]ailure to provide specific citations to evidence in the record as

required by this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted in accordance with [Local] Rule 56(a)1 or in the Court imposing sanctions, including . . . an order granting the motion if the undisputed facts show that the movant is entitled to judgment as a matter of law.").[1]  Because Plaintiff has filed no Rule 56(a) statement, the Court is not obligated to consider any of the facts Plaintiff asserts in his Opposition. However, the Court has nevertheless considered facts asserted in Plaintiff's Opposition where they are supported by admissible evidence elsewhere in the record.

**B.** **Factual Background**

Plaintiff began working as an instructional assistant for the Defendant CJTS in January 2007.  [Dkt. 43-4, January 12, 2016 Deposition of Ruel Raphael ("Raphael Dep."), at 19-20, 22].  As an instructional assistant, Plaintiff's responsibilities included providing instructional support services to students working under the direct supervision of a classroom teacher.  [Raphael Dep. at 22; Dkt. 43-5].  Plaintiff's direct supervisor was Barbara Mule, State School Department Head.  [Meehan Aff. ¶ 12].  John Mattera, the principal of CJTS supervised Plaintiff indirectly.  [Raphael Dep. at 27].

---

[1] While Rule 56(e) also permits the Court to give a party the "opportunity to properly support or address the fact," such a course of action is not warranted. Defendants complied with Local Rule 56(b)'s mandate to provide *pro se* plaintiffs with notice of the procedures required to oppose a motion for summary judgment.  Plaintiff therefore should have been aware of these requirements before filing his opposition, the Court has little confidence that Plaintiff will produce a brief that comports with Rule 56 if given the opportunity to do so.

Plaintiff was formally counseled or reprimanded numerous times between April 2007 and May 2011 for failing to report to work, failing to report absences, and failing to submit required medical certificates when taking sick leave. [*See* Dkts. 43-6, 43-7, 43-8, 43-9; Meehan Aff. ¶¶ 14-25]. He was also informed that failing to improve his attendance could result in an "unsatisfactory" performance rating, and that two such ratings could result in his termination. [Meehan Aff. ¶¶ 24; Dkt. 43-10].

In August 2011, Plaintiff, his union representative, Principal Mattera, and the school superintendent Donna Gambria, entered into a "last chance agreement" in which Plaintiff agreed to "demonstrate immediate and sustained improvement in his attendance" in lieu of dismissal. [Raphael Dep. at 36; Dkt. 43-12 ¶ 1]. Plaintiff also agreed that several of his absences were unauthorized absences, and that the failure to produce a completed medical certificate after taking sick leave would result in his dismissal. [Dkt. 43-12 ¶ 4]. He also agreed not to seek "redress for the actions taken by the Department of Children and Families in any forum available to him including . . . Federal Courts," [Dkt. 43-12 ¶ 6] and he released Defendants from liability arising from the agreement. [Dkt. 43-12 ¶ 9]. In Sepember 2011, Plaintiff received a performance rating of "unsatisfactory," based solely on his failure to comply with the attendance policy. [Dkt. 43-13; Meehan Aff. ¶¶ 39-40].

In addition to excessive unauthorized absences, Defendants have offered evidence that Plaintiff misused state computer equipment by using his state email address to promote his music career. [Dkt. 43-14; Meehan Aff. ¶¶ 31, 32, 35,

4

37, 38].  This misuse of state equipment constituted "neglect of duty," and following a thorough Labor Relations Adminstrative Investigation, Plaintiff was suspended for thirty days.  [Dkt. 43-14; Meehan Aff. ¶¶ 33-38].  Plaintiff's suspension was imposed after a hearing at which Plaintiff had union representation.  [Meehan Aff. ¶ 38].  In August of 2012, Mr. Raphael received a second "unsatisfactory" performance rating in connection with his computer use. [Dkt. 43-15; Meehan Aff. ¶¶ 41-42].

After Plaintiff received his second "unsatisfactory" service rating, Plaintiff was advised that Defendants were contemplating dismissal.  [Meehan Aff. ¶ 44]. Defendants held two pre-disciplinary meetings at which Plaintiff had union representation.  [Meehan Aff. ¶ 45].  At these meetings, Plaintiff argued that other employees had behaved similarly or worse, but were not disciplined, and offered Defendants names of these individuals.  [Meehan Aff. ¶ 46].  Attendance records for these individuals show that none of them had a comparable volume of unauthorized absences in violation of DCF policy, and that none of them had used their state email addresses for personal gain.  [Meehan Aff. ¶¶ 62, 64]. Moreover, many of these individuals held different positions and had different supervisors than the Plaintiff.  [Meehan Aff. ¶¶ 66-67].

III.   Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse*, 611 F.3d 98,

106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought.  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (quotation omitted).  In addition, "the court should not weigh evidence or assess the credibility of witnesses" on a motion for summary judgment, as "these determinations are within the sole province of the jury."  *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).

"A party opposing summary judgment 'cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.'  At the summary judgment stage of the proceeding, [p]laintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient."  *Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (quoting *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir. 1996)).  "Summary judgment cannot be defeated by the presentation . . . of but a 'scintilla of evidence' supporting [a] claim."  *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010) (quoting *Anderson*, 477 U.S. at 251).

6

IV.    Discussion

Plaintiff claims that he was subjected to disparate treatment on the basis of his membership in a protected class and that Defendants retaliated against him for filing a complaint of discrimination.  Upon review of all facts supported by evidence properly admitted to the record, the Court finds no genuine issues of fact that would preclude summary judgment.

Title VII claims for both disparate treatment and retaliation are evaluated using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010); *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996). "Under this framework, a plaintiff must first establish a *prima facie* case of discrimination." *Ruiz*, 609 F.3d at 491 (citation omitted).  "The burden of proof that must be met to permit an employment discrimination plaintiff to survive a summary judgment motion at the prima facie stage is *de minimis*." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).  "Once a plaintiff meets this initial burden, the burden then shifts to the defendant to offer a legitimate non-discriminatory reason for the termination." *Ruiz*, 609 F.3d at 492 (citation omitted).  If the defendant offers a legitimate non-discriminatory reason for the termination, "the burden returns to the plaintiff to show that the real reason for plaintiff's termination was his race and national origin." *Id.* (citation omitted).

A.  Disparate Treatment

Title VII makes it unlawful "for an employer . . . to discharge . . . or otherwise to discriminate against any individual . . . because of such individual's race [or] color."  42 U.S.C. § 2000e-2(a)(1).  To establish a prima facie case of

7

disparate treatment, "a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Ruiz*, 609 F.3d at 491-92 (citation omitted).  The parties do not dispute that, as a black man, Plaintiff is a member of a protected class, that he was qualified for his position as an instructional assistant, and that he suffered adverse employment actions when he was suspended for thirty days, and when he was terminated.  However, the facts in the record do not evidence circumstances giving rise to an inference of discrimination.

Evidence giving rise to an inference of discrimination includes (1) the employer's criticism of the plaintiff's performance in ethnically degrading terms; (2) invidious comments about others in the employee's protected group; or (3) the more favorable treatment of employees not in the protected group.  *See Chambers*, 43 F.3d at 37.  "Because an employer who discriminates is unlikely to leave a 'smoking gun' attesting to a discriminatory intent, a victim of discrimination is seldom able to prove his claim by direct evidence, and is usually constrained to rely on circumstantial evidence."  *Id.*

A plaintiff usually presents a prima facie case by "showing that the employer . . . treated [the employee] less favorably than a similarly situated employee outside his protected group."  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).  The plaintiff must be "similarly situated in all material respects

8

to the individuals with whom [he] seeks to compare [himself]." *Id.* (citations omitted).

While Plaintiff has named a number of alleged comparators, he has offered no evidence that their situations bear "a reasonably close resemblance" with respect to Plaintiff's conduct or the conditions of his employment. *See Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). "Whether two employees are similarly situated ordinarily presents a question of fact for the jury." *Graham*, 230 F.3d at 39. However, "where a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001); *see also Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001) ("[A] court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met."). Most of the alleged comparators had different job titles and supervisors than Plaintiff, and Defendants have offered unrebutted evidence that none had attendance or computer use issues as serious as Plaintiff's, and none received two "unsatisfactory" performance ratings [Meehan Aff. ¶¶ 66-67]. No record evidence suggests that Defendants' treatment of similarly situated employees raises an inference of discrimination.

Moreover, Plaintiff has offered no evidence of any ethnically degrading or invidious comments that would give rise to an inference of discrimination. In

9

support of his claim of racial animus, Plaintiff contends that Eileen Meehan, the DCF Director of Human Resources, told him that he should "worry about himself" in a "racist and discriminative [sic] manner," [*see* Dkt. 45 at 6]. The statement itself is racially benign and there is no evidence on the record to support his conclusion. On the contrary. The evidence on the record shows that Plaintiff's performance deficiencies were more serious than those of his coworkers. As a consequence, his focus on their performance deficiencies was unavailing. Plaintiff has therefore failed to establish a prima facie case of disparate treatment.

### B. Retaliation

Title VII makes it unlawful for employers to retaliate against employees who oppose employment discrimination, or submit or support a complaint of employment discrimination. *See* 42 U.S.C. § 2000e-3(a); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2532 (2013). "'To establish a prima facie case of retaliation, an employee must show [1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action.'" *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003) (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998).

"Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . which require[] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 133 S. Ct. at 2533. This causal connection "can be shown indirectly by timing: protected activity followed closely in time by

adverse employment action." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015).

Plaintiff filed grievances following both of his "unsatisfactory" performance ratings. [Meehan Aff. ¶ 54]. The grievances that Plaintiff attached to his opposition state that he was "being subjected to discrimination" and asked his employer to "cease and desist discriminatory practices." [Dkt. 45-1]. His first grievance was filed after he had been counseled and reprimanded for violating the attendance policy, and after he received his first "unsatisfactory" service rating. Plaintiff filed a second grievance immediately before an investigation into his computer use. Although there is no evidence in the record of the content of that grievance—admissible or otherwise—for purposes of this decision the Court will assume that the grievance constituted a "protected activity" under Title VII.

Even if the evidence showed that a protected activity was followed closely in time by Plaintiff's termination, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). The record shows that over the course of two years, Plaintiff misused his state email account and took excessive and unauthorized leave on numerous occasions. [*See* Section II.C., *supra*]. Plaintiff was terminated only after multiple meetings with his employer with the support of a union representative, as well as thorough human resources investigations into Plaintiff's misconduct. [*See* Dkt. 43-14;

11

Meehan Aff. ¶¶ 33-38, 45, 61-65].  Plaintiff therefore cannot establish a prima facie case of retaliation.

V.   <u>Conclusion</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.  The Clerk is directed to close this file.

IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge


Dated at Hartford, Connecticut:  January 3, 2017